UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUBHASH MADAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 02-2016 (ESH) |
| ) | |
| ELAINE CHOW, SECRETARY, ) | |
| DEPARTMENT OF LABOR ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

Plaintiff Subhash Madan, an Asian born in India, alleges race and national origin discrimination, as well as retaliation, by the defendant, the Department of Labor's Bureau of Labor Statistics ("BLS" or "Bureau"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff, who is proceeding *pro se*, claims that the Bureau had a discriminatory motive for failing to hire him when he applied for available positions as an economist in 1993 and in 1997, and that it retaliated against him in 1997 for complaints he had made about the 1993 hiring process. Defendant has moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies for the 1993 non-selection, and that he cannot make out a claim of pretext for the 1997 claim. It also argues that he cannot establish a prima facie case of retaliation. For the reasons set forth below, the Court grants defendant's motion.

## BACKGROUND

Plaintiff applied for numerous entry level Grade 9 Economist positions at BLS in 1993 and for one additional position in 1997. He complains that the two interviews he had on

October 13, 1993 were superficial in that he was not asked any questions about his qualifications. He believes that he was better qualified than the other candidates. (Compl. ¶¶ 4-6.) When defendant rejected him for both positions, he contacted Mr. Steve DeCuir in the Personnel Department of BLS to "quietly complain" about the hiring process. (*Id.* ¶ 7.; *see* Pl.'s Ex. 8 (Letters dated Dec. 27, 1993 and Nov. 24, 1993).) After receiving no response from BLS, plaintiff requested contact information for an Equal Employment Opportunity ("EEO") representative, and BLS told him to direct his complaint to the Bureau instead. (Compl. ¶ 8.) Plaintiff did not take any further action, but he alleges that he did not know the procedural requirements for filing an EEO complaint. (*Id.*)

On June 24, 1997, BLS held a job fair at its Washington, DC headquarters. Plaintiff submitted his application for a Grade 9 Economist position. (*Id.* ¶¶ 10-11; *see* Pl.'s Ex. 12 (Recruiter's Briefing for BLS Job Fair).) He was informed that he was not selected on November 18, 1997. (Compl. ¶14.) He initiated EEO counseling on February 24, 1998 and filed a complaint. (Am. Answer ¶ 15.) After an EEOC hearing, the Commission found no discrimination on February 27, 2002, and subsequently denied his request for reconsideration on July 11, 2002. (Compl. Attach. 1 "Denial of Request for Reconsideration.") Plaintiff alleges that the BLS scoring and ranking process for job applicants generally and as applied to his application was discriminatory.

Ms. Darlene Armstrong was assigned to implement the BLS rating and ranking pursuant to the guidelines of BLS' Delegated Examining Unit Operations Handbook and her own judgment. (Def.'s St. of Material Facts (hereinafter "Def.'s Facts") ¶ 7.) Each applicant is ranked by a numerical value of two, four or six based on five different factors. (Def.'s Ex. 9

(Rating Schedule); Def.'s Ex. 5 (Vacancy Announcement).)  The candidates are then ranked according to their total numerical score.  If there are any ties, BLS enters the candidates' social security numbers into a computer system, which ranks the candidates randomly.  (Pl.'s Ex. 18 (Tr. of EEOC Proceeding) at 157.)

Ms. Armstrong rated plaintiff with a score of 90 and the computerized ranking placed him second out of the seven applicants who had received this score.  Ultimately, he landed at position number 10 of the 43 applicants on the certificate of eligibles.  (Pl.'s Ex. 13 (Certificate of Eligibles).)  Once applicants are rated and ranked by the examiner, the certificate is circulated among BLS managers to ensure that they have the opportunity to interview applicants.  The list of names is "worked" in groups of three starting from the "highest three eligibles" pursuant to 5 CFR § 332.404.  (Def.'s Ex. 7 (Response to Interrogatories) at 9-10.)  This "rule of three" precludes an agency from skipping down the list and choosing among those who have a lesser score.  (*Id*.)  The first ranked applicant did not respond to BLS' offer.  The chosen candidate, Patricia Ryle, was second on the list with a score of 94.  BLS manager, David Hile interviewed her and was impressed by her experience in writing for publications.  (Def.'s Ex. 13 (Tr. of EEOC Proceeding) at 225.)  In addition, the data his office received and analyzed came directly from state governments.  Ryle had worked for state agencies, and Hile found this experience to be particularly significant.  (*Id*.)  Once she was selected, the next group of candidates for consideration were the third, fourth and fifth ranked candidates.  Since no manager at BLS expressed an interest in these next three candidates, the certificate had to be closed with no additional hires made.  Another manager was interested in the ninth and eleventh ranked candidates, but was not able to hire either candidate because of the rule of three.  (*Id*. at 181.)

Plaintiff argues that he was better qualified than Ms. Ryle. Particularly, he challenges the rating of two factors: Factor 2: Knowledge of mathematics and/or statistics and Factor 3: Knowledge of Computer Programming. (Pl.'s Opp'n at 21.) Although Ms. Ryle received either the same or better score for these factors, plaintiff compares semester credit hours, teaching, and practical experience in both areas to prove that he was better qualified. (*Id*.) He also contends that the top six candidates, with the exception of the selectee Ms. Ryle, are of foreign national origin. (*Id*. at 20.) He claims that this non-selection was retaliatory for his previous attempt to complain about his experience in 1993.

## **ANALYSIS**

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255; *see also Wash. Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The nonmovant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant must provide evidence that would permit a reasonable jury to find in her favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998), *aff'd*, 1999 WL 825425 (D.C. Cir. Sept. 27, 1999) (citation omitted). The Court must also bear in mind that *pro se* complaints, "'however inartfully pleaded,' are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## I.    Count I: Discrimination

### A.    Plaintiff's 1993 Claim

Defendant moves to dismiss plaintiff's Title VII claim for events occurring in 1993 on the basis that he failed to exhaust the available administrative remedies before bringing suit. Lodging a timely administrative charge is a prerequisite to filing a Title VII claim in district court. *See Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985). An employee complaining of discrimination must consult an EEO counselor within 45 days of the date of the allegedly discriminatory action in order to try to informally resolve the matter. *See* 29 C.F.R. § 1614.105(a)(1). As a general rule, discrimination claims alleging conduct that occurred more than 45 days prior to the initiation of administrative action are time-barred in a subsequent action before the court. *See Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C. Cir. 1982).

These procedural requirements governing plaintiff's right to bring a Title VII claim in court are not mere technicalities, but "part and parcel of the Congressional design to vest in the

federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983) (citations omitted). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The deadlines allow an employer to investigate promptly before evidence becomes stale. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980) (the Title VII administrative filing requirement protects employers from the burden of defending claims that arise from decisions that were made long ago). Failure to exhaust administrative remedies is, however, an affirmative defense, and the burden is on defendant to prove that plaintiff failed to properly exhaust them. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Brown*, 777 F.2d at 13.

When Mr. Madan was first rejected in late October of 1993, he contacted BLS and indicated his desire to file a complaint with the EEOC. He was told to direct his complaint to the Bureau. He concedes that he did not pursue the matter any further. Because plaintiff did not comply with the administrative procedures, the defendant did not have an opportunity to investigate and resolve the matter internally. Therefore, plaintiff's claim of discrimination is barred for failure to exhaust his administrative remedies.

In the alternative, plaintiff's 1993 claim is barred by the applicable statute of limitations. A charge under Title VII must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred or 300 days if the person aggrieved initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1). Plaintiff did not file his discrimination

claim until February 1998, more than four years after the alleged discrimination.  (Am. Answer ¶15.)

      B.      **Plaintiff's 1997 Claim**

Defendant challenges plaintiff's 1997 claim on the merits, thus triggering the application of the *McDonnell Douglas* three-part "shifting burdens" test.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  When defendant seeks summary judgment, plaintiff has the initial burden of proving a prima facie case of discrimination.  *Id.* at 802.  If he succeeds, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions.  *Id*.  Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").  If defendant is successful, then "the *McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is] discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted).  At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision.  *Burdine*, 450 U.S. at 256; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir.) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff") (internal citations and quotation marks omitted).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997).  Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible.  He must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)).  "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Id.*  In other words, a district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions." *Id.* (internal citation and quotation marks omitted).

Plaintiff's prima facie case of discrimination cannot be disputed: he is a member of a protected class and he applied for, but was not selected for, an open position within BLS. Defendant, in turn, has met its burden to put forth a legitimate reason for not selecting plaintiff. BLS claims that plaintiff's non-selection was the result of BLS's standard rating and ranking procedures for hiring, including the rule of three.  The burden thus falls to plaintiff to discredit

this legitimate explanation by showing that it was a mere "pretext" for discrimination. (Def.'s Mot. at 15.)

Plaintiff contends that the rating and ranking procedures, along with the rule of three, were manipulated to in order to discriminate against him.  He basically relies on his belief that he was better qualified for the position than candidate who was selected.  However, his claim that he was the better candidate is both factually unsupported and legally insufficient.  In two opinions, the D.C. Circuit has explained that, in a dispute involving relative job qualifications, discrimination will not be inferred absent a showing that plaintiff's qualifications were *far superior* to the successful candidate's.  In *Aka v. Washington Hospital Center*, the Circuit noted:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate--something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

157 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (emphasis added).  In that case, Aka's job qualifications were far superior to those of Valenzuela, the candidate selected for a hospital pharmacy technician job.  *Id.* at 1299.  Aka had nineteen years of experience handling pharmaceutical supplies, compared with Valenzuela's two months of volunteer work at a pharmacy.  *Id.* at 1296-97.  Aka had a master's degree in business and professional administration with a concentration in health service management, while Valenzuela had no college degree.  *Id.* at 1297.  Aka's credentials were sufficiently superior to those of the successful candidate to create a jury question as to whether the hospital's proffered reason for its decision was false.

In contrast, in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), there was no such evidence of "*stark superiority of credentials*" between plaintiff and the successful candidate for the position of Chief at the Department of Justice's Environmental Crimes Section. *Id.* at 429-30 (emphasis added). Stewart had more prosecutorial experience in environmental matters, but Uhlmann -- the successful candidate -- also had significant prosecutorial experience, with over twenty-five jury trials to his credit. *Id.* at 430. Stewart had two years of service as an Assistant United States Attorney, compared with Uhlmann's six months in that position. *Id.* The Circuit found that these "fine distinctions" were not sufficient to raise a jury question. *Id.*

> Stewart's pointing to differences in qualifications that merely indicate a "close call" does not get him beyond summary judgment. This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision.

*Id.*; *see also Edwards v. Principi*, No. 03-50504, 2003 WL 22709001, at *2 (5th Cir. Nov. 18, 2003) (to show pretext, "a plaintiff [must] show a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face") (internal citation and quotation marks omitted). In short, it falls to plaintiff "to address the issue of *discrimination*, not to quibble about the candidates' relative qualifications." *Skelton v. ACTION*, 668 F. Supp. 25, 26 (D.D.C. 1987), *aff'd*, No. 87-5353, 1988 WL 156306, at *1 (D.C. Cir. May 12, 1988).

Plaintiff's evidence falls far short of raising an inference of discrimination. First, plaintiff was ranked tenth on the candidate list with a score of 90 as compared to Ms. Ryle, who ranked second with a score of 94. Plaintiff attempts to challenge these scores by discrediting Ms.

Armstrong's judgment relative to the ranking of two specific factors.  He attempts to prove his superior knowledge of mathematics and/or statistics by claiming that he has had more semester hours of course work and submitted a dissertation in the subject area along with his application.  During the EEOC hearing, Ms. Armstrong testified that Ms. Ryle frequently used statistical analysis techniques in her work at the U.S. Department of Labor and that the Bureau does not consider a dissertation as part of the examining process.  (Pl.'s Ex. 18 at 141.)  Plaintiff argues that knowledge of mathematics and statistics is "too specialized" and "not something one acquires on the job," but rather in an academic setting.  (Pl.'s Opp'n at 26.)  Plaintiff also contends that he had more knowledge of computer programming and techniques than Ms. Ryle, and yet, they received the same, lowest possible score of 2.  (*Id*. at 28.)  Again, during the EEOC hearing, Ms. Armstrong stated, "I was just simply looking for work experience again.  And yes, there is a possibility I could have given you a higher [score].  Again, I had to make a judgment call."  (Pl.'s Ex. 18 at 147.)

Rather than showing that his qualifications are far superior to those of Ms. Ryle, plaintiff's argument amounts to an invitation to second guess defendant's hiring decision involving qualified candidates -- an invitation the Court cannot accept.  *Stewart*, 352 F.3d at 430.  Both Ms. Armstrong and Mr. Hile were impressed by Ms. Ryle's work experience with writing publications and analyzing data from various state agencies.  Ms. Armstrong rated plaintiff according to the procedures and factors that are outlined in the BLS Delegated Examining Unit Operations Handbook.  BLS' decision not to consider certain qualifications, such as dissertations, while emphasizing other qualifications, such as hands-on experience, when ranking candidates is within its discretion.  Even if a court suspects that a job applicant was victimized by poor selection

procedures, which is not the case here, it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive. *Fischbach*, 86 F.3d at 1183. In *Aka*, the Court found plaintiff significantly more qualified where he had nineteen years of experience whereas the selectee had two months of volunteer experience. In this case, plaintiff is unable to point to similarly stark differences in qualifications. He instead requests that the Court supplant its judgment for that of BLS personnel to determine he was the better qualified candidate.

Plaintiff also alleges, without any evidentiary support, that the rule of three was used to discriminate against him because the list of eligibles "was weighted at the top by people of certain race . . . which the mangers did not like." (Pl.'s Opp'n at 36.) In response, defendant argues that he has failed to show how the rule of three was used to specifically disqualify him. BLS considered the first three names on the certificate of eligibles. The first candidate did not respond to BLS. The second candidate, Ms. Ryle, did respond and the manager who interviewed her showed a great interest in her experience. Once she was selected, BLS looked at the next three candidates. Since there was no response from any BLS manager expressing an interest, the agency followed its standard procedure and closed the certificate. BLS notes that another BLS manager was interested in two candidates ranked nine and eleven on the certificate but was not able to hire either because of the rule of three. There is no evidence that BLS deviated from the rule of three. Only if plaintiff could show that the ninth or eleventh candidate had been chosen over him could he argue that the rule of three was not BLS's true reason for disqualifying him. But those candidates were also precluded by BLS's adherence to this rule.

Plaintiff also argues that the rule of three is discriminatory by its very nature because the "Agency can simply keep re-advertising its positions until it can find people of certain

demographic characteristics on top of the certificate that it finds acceptable." (*Id.*)  However, a facial challenge to BLS' hiring regulations is not properly brought under Title VII.  The plaintiff must show that the rule of three was applied to him in a discriminatory fashion.

Finally, plaintiff argues that he was supposed to be placed on a standing inventory list as part of BLS' recruitment procedures.[1]  (*Id.* at 15-16.)   He claims that as part of the standing register, he was "entitled to certain considerations, which were denied to him." (*Id*. at 16.)  He hopes to prove this assertion upon further discovery.[2]  However, plaintiff's Motion to Compel Production of Documents was denied by U.S. Magistrate Judge Facciola.  Judge Facciola reviewed each one of his requests in the Motion to Compel on its merits and found that the documents he sought simply do not exist.  *Madan v. Chao*, slip op. at 19, No. 02-2016 (D.D.C. Dec. 17, 2004) (denying motion to compel).  The Court must therefore reject any claims premised on an expectation of future discovery.

## II.     Count II:  Retaliation

The Court now turns to plaintiff's claim that BLS retaliated against him by not hiring him in 1997.  "The *McDonnell Douglas* framework is also applicable to claims of retaliatory dismissal." *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984).  In determining whether plaintiff has made out a prima facie case of retaliation, plaintiff must show "(1) that []he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action;

---

[1] A standing inventory is "[a]n inventory of eligible competitors who are assigned a numerical rating upon receipt of their application and certified in score order by occupation, grade, location, etc." (Pl.'s Ex. 15 (BLS Delegate Examining Operations Handbook) at 3.)

[2] Plaintiff also alleges that BLS violated certain hiring procedures, and hopes to substantiate his claims once discovery is complete. (Pl.'s Opp'n at 17-18.)  Again, such a hope cannot sustain a claim of discrimination.

and (3) that a causal connection existed between the two." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (internal citation and quotation marks omitted).

Plaintiff failed to seek EEO counseling or file an EEO complaint, both well-established protected activities. *Judge v. Marsh*, 649 F. Supp. 770, 782 (D.D.C. 1986) (citing *McKenna*, 729 F.2d at 790-91 n.54). Instead, in 1993, he called the Bureau to request EEOC representative contact information and wrote to a personnel staff member. Even assuming these communications constituted protected activity, plaintiff's retaliation claim would fail because he fails to satisfy the "causal nexus" requirement. Plaintiff offers no direct evidence of retaliatory motive and without such evidence, only "very close" temporal proximity between a protected activity and an adverse action suffices to show a causal connection between the two. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases finding temporal proximity of four and three months insufficient to demonstrate a causal connection); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000); *Broderick v. Donaldson*, 2004 WL 2166165, at *5 (D.D.C. 2004). Plaintiff cannot establish an inference of causation where there was over a three-year hiatus between his initial attempts to complain about the hiring process in 1993 and his non-selection in 1997.

Finally, on the merits, plaintiff's retaliation claim must be rejected since he has not overcome defendant's persuasive showing of a legitimate, non-pretextual explanation for not selecting plaintiff in 1997.

## CONCLUSION

For the reasons stated above, plaintiff has failed to meet his burden for showing either discrimination or retaliation. Accordingly, the defendant's motion for summary judgment is

granted and plaintiff's complaint is dismissed with prejudice.  A separate Order accompanies this Memorandum Opinion.

s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date:   March 8, 2005